IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ANDRE COLELLA, et al.,            :
                                  :
            Plaintiffs,           :   CIVIL ACTION
                                  :
     v.                           :   No. 09-cv-2221
                                  :
STATE FARM FIRE & CASUALTY COMPANY,:
                                  :
            Defendant.            :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                       **March 30, 2010**

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 13), and responses thereto (Doc. Nos. 14, 15, 16). For the reasons set forth in this Memorandum, summary judgment is granted.

**I. BACKGROUND**[1]

Plaintiffs are Andre and Christina Colella. Defendant is State Farm Fire and Casualty Company ("State Farm"). On July 1, 2008, Plaintiffs suffered a physical loss to their home which is located at 650 9th Avenue, Warminster, Pennsylvania. At the time of the loss, the home was covered under an insurance policy with

---

[1] In analyzing a motion for summary judgment, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). In this case, the parties do not dispute the key facts of the case.

1

State Farm.  Plaintiffs' Complaint sets forth two claims against State Farm arising out of this loss: Breach of Contract (Count I) and Bad Faith (Count II).  At the time of Plaintiffs' loss, they had an all-risk insurance policy with State Farm under policy number 768-LY-4561-3 which was comprised of Homeowners Policy form FP-7955, form FE-7269 Amendatory Endorsement, form FE-5320 Policy Endorsement, form FE-5398 Fungus (Including Mold) Exclusion, form FE-5287 Back-up Dwelling/Listed Property, form FE-5452 Motor Vehicle Endorsement, and form FE-5831 Telecommuter Coverage (collectively, the "Policy").

The Colellas live in a two story home with a basement, however the basement does not run across the entire length of the first floor.  Underneath the part of the house which is not supported by the foundation is a concrete slab with soil underneath.  On July 1, 2008, Plaintiffs called State Farm and reported a claim to their agent.  They told the agent that a broken pipe underneath the house was causing damage to carpeting and walls in the basement.  Plaintiffs advised their agent that they had retained a plumber who would be coming to the house on July 10, 2008 to determine if there was a crack in the sewer pipe under the house.  On July 10, 2008, Plaintiffs retained Free Flow Inc. to perform a camera scope of the pipe believed to be at issue.  On July 11, 2008, public adjuster Daniel Pierson contacted State Farm and advised State Farm that he was

representing Plaintiffs in their insurance claim.

State Farm representative Alice Hoffman was assigned to the matter and she contacted Pierson's office to schedule an inspection. On July 22, 2008, Hoffman and Pierson met at Plaintiffs' home for an inspection. Pierson advised Hoffman that the drain line under the family room was leaking and that it had caused water damage to the basement wall. Hoffman also advised Plaintiffs that prior to determining coverage, she would need to retain a plumber to perform an inspection to determine the cause of the loss.

Hoffman retained plumber Tom Pileggi to perform an inspection of Plaintiffs' home. On July 28, 2008, Pileggi met with Pierson at Plaintiffs' home. Pileggi reviewed paperwork provided by Pierson, viewed the video taken of the cast iron pipe under the slab by Free Flow, Inc., and inspected the first and second floors of Plaintiffs' home. Afterwards, Pierson spoke to a State Farm team manager, Mike Pacchione. Pierson told Pacchione that water was in fact leaking from a drain line beneath the concrete slab supporting part of the home. Pacchione advised Pierson that there may be a coverage issue if the damage was caused by water below the surface of the ground. Pacchione also spoke to Pileggi who advised Pacchione that he scoped the line and that the leak was somewhere in the fifteen to eighteen feet of run pipe that was under the slab. Pileggi opined that

3

water was leaking from the pipe underneath the slab into the ground and then into the foundation of the home.

On July 29, 2008, Pacchione called Pierson and explained the results of Pileggi's inspection. Pacchione told Pierson that the claim would be denied based on the inspection and the relevant exclusionary language in the policy regarding ground water. The Policy states in relevant part:

> 2. W(e) do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other clauses acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the even occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
>> C. Water damage, meaning:
>>
>>> (1) flood, surface water, waves, tidal water, tsunami, seich, overflow of a body of water, or spray from any of these, all whether driven by wind or

>                rot;
>
>                (2) water or sewage from outside the
>                residence premises plumbing system that
>                enters through sewers or drains or water
>                which enters into and overflows from
>                within a sump pump, sump pump well or
>                any other system designed to remove
>                subsurface water which is drained from
>                the foundation area; or
>
>                (3) water below the surface of the
>                ground, including water which exerts
>                pressure on, or seeps or leaks through a
>                building sidewalk, driveway, foundation,
>                swimming pool or other structure.

Pacchione prepared a denial letter on July 29 based on State Farm's investigation and conclusion that Plaintiffs' loss was caused from water below the surface of the ground.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of

the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006) (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).

## III. Discussion

The parties do not dispute any of the key facts in this case. Instead, this case turns on the interpretation of the Policy and the question of what is required under Pennsylvania law for an insurer to be liable for bad faith. In Pennsylvania, the construction of an insurance policy is a question of law which is to be resolved by the court. Hunyaday v. Aetna Life and Casualty, 578 A.2d 1312, 1313 (Pa. Super. 1990). Therefore, these issues are ripe to be decided on summary judgement.

6

## A.  Breach of Contract

To prove breach of contract a plaintiff must show the existence of a contract, a breach of duty imposed by the contract, and resulting damages.  Presbyterian Medical Center v. Budd, 832 A.2d 1066, 1070-71 (Pa. Super. 2003).  Under Pennsylvania law, the unambiguous terms of an insurance policy are to be enforced as written.  Pennsylvania Mfrs. Ass'n Insurance Co. v. Aetna Casualty & Sur. Insurance Co., 233 A.2d 548, 551 (Pa. 1967).  If a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer.  Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C., 821 F.2d 216, 220 (3d Cir. 1987).  In determining whether a provision in an insurance policy is ambiguous, the test is whether reasonable people, considering it in context, would differ as to its meaning.  Celley v. Mutual Benefit Health & Accident Ass'n, 324 A.2d 430, 434 (Pa. Super. 1974).  However, the fact that parties do not agree upon the proper interpretation does not necessarily render the contract ambiguous.  Vogel v. Berkley, 511 A.2d 878, 881 (Pa. Super. 1986).  Additionally, a court should read policy provisions to avoid ambiguities, if possible.  St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981).  "[T]he Court [should] adopt the interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable

7

and natural intention of the parties, bearing in mind the objects manifestly to be accomplished." Galvin v. Occidental Life Ins. Co. of Cal., 211 A.2d 120, 122 (Pa. Super. 1965).

Finally, it should be noted that where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer bears the burden of proving such defense. Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). Plaintiffs' insurance policy in effect at the time of the loss was an "all risks" policy. An all risks policy provides coverage to risks that are not generally covered by other insurance policies. Such policies permit recovery for accidental losses in the absence of fraud or misconduct on the part of the insured, unless the policy specifically excludes the loss. Under an all risks policy, the burden is on the insured to show that the loss occurred, but thereafter the burden shifts to the insurer to establish that the loss falls within a specific exclusion of the policy. Wexler Knitting Mills v. Atlantic Mutual Ins. Co., 555 A.2d 903, 905 (Pa. Super. 1989).

Plaintiffs argue that their loss does not fall under the Policy's ground water exclusion because the water originated from a pipe and was not naturally occurring ground water. Defendant counters that the policy unequivocally excludes coverage for losses caused by water below the surface of the ground, regardless of the source. Defendant believes that since the

damage to Plaintiff's home was caused by a leak in a pipe which caused water to leak into the ground and then into the foundation of the home, it falls within the policy's exclusion. Defendant argues that its policy does not limit the exclusion for losses caused by water below the surface of the ground to only natural groundwater.

The Court agrees with the Defendant. Plaintiffs' loss falls within the ground water exclusion; therefore, Defendant properly denied Plaintiffs' claim. Plaintiffs' policy contains a lead in clause to the ground water exclusion which says:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss <u>regardless of</u>: (a) the <u>cause</u> of the excluded event; . . . or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, <u>arises from natural or external forces</u> or occurs as a result of any combination of these . . .
> (emphasis added).

The plain language of the policy clearly shows that the exclusion applies regardless of what caused the excluded event and regardless of whether the cause of the excluded event was from natural or external forces. The language of the Policy is in no

way ambiguous. It clearly and succinctly states that regardless of the cause, any water damage which seeps into the foundation from water below the surface of the ground is not covered by the Policy.

Defendant has met its burden of showing that the exclusion applies in this case. It is undisputed that Plaintiffs' loss was caused by water that came from below the surface of the ground. All the parties agree that the damage to Plaintiffs' home was caused by a leaking pipe under the slab which caused water to leak into the ground and then to seep into the foundation of Plaintiffs' property. This type of water damage is specifically excluded under the Policy's definition of water damage. Since the lead in clause says that this type of damage is excluded regardless of its origin, the Court must find for the Defendant. While it is unfortunate that Plaintiffs suffered such horrible damage to their home, Defendant was within its rights to deny the claim.

Plaintiffs have failed to cite a case which would cause the Court to read this language in a different light. <u>Kolzowsi v. Penn Mutual Insurance Company</u> is inapplicable because the main issue in that case was whether the damage to the insured's property came from within their own plumbing or external plumbing. The Policy in this case is more expansive as it excludes any loss that results from water below the surface of

10

the ground even if the water leaked from an insured's own plumbing system. Finally, Plaintiffs' argument about the efficient proximate cause doctrine fails because the lead in clause by definition negates the efficient proximate cause doctrine. T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp. 2d 284, 293 (M.D.Pa. 2006). Therefore, summary judgement is granted in favor of Defendant on Count I.

**B. Bad Faith**

Under Pennsylvania law there is no common law remedy for bad faith on the part of insurers. D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company, 431 A.2d 966, 970 (Pa. 1981); Romano v. Nationwide Mutual Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. 1994). However, there is a statutory remedy under 42 Pa.C.S.A. § 8371. In order to recover for a bad faith claim, a plaintiff must show: (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. Terletsky v. Prudential Property and Casualty Insurance Co., 649 A.2d 680, 688 (Pa. Super. 1997); O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. 1999); see also Keefe v. Prudential Property and Casualty Insurance Co., 203 F.3d 218, 225 (3d Cir. 2000).

Bad faith is a frivolous or unfounded refusal to pay, lack

of investigation into the facts, or a failure to communicate with the insured. Romano, 646 A.2d at 1232. Under Pennsylvania law, an insurer acts in "bad faith" when it acts for a dishonest purpose or breaches a known duty through some motive of self-interest. Bad faith pursuant to 42 Pa.C.S.A. Section 8371 must be proven by clear and convincing evidence. Id. (citing Cowden v. Aetna Casualty and Surety Co., 134 A.2d 223, 229 (Pa. 1957)). Although an insurer's conduct need not be fraudulent to constitute "bad faith" under Pennsylvania law, mere negligence or bad judgment is not enough. Polselli v. Nationwide Mutual Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). Plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). However, good faith is no defense if there was in fact no good cause to refuse coverage. Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322 n. 4 (Pa. 1963).

Plaintiffs argue that Defendant acted in bad faith by denying their claim in a letter, by failing to pay for Plaintiffs' loss, by misrepresenting the language and intent of the water damage exclusion, by treating Plaintiffs with reckless indifference, by not having a reasonable basis for denying Plaintiffs' benefits under the policy, and by deviating from industry standards.

Plaintiffs have failed to show any evidence of bad faith on the part of Defendant. Plaintiffs attempt to argue that Defendant's decision to deny coverage was against established case law. However, neither this Court, nor any of the parties, have been able to cite a single case from this jurisdiction that is directly on point to this factual scenario. Therefore, it is impossible that Defendant's decision was counter to established case law. Nor is it persuasive that Defendant failed to conduct a legal search for precedent before denying Plaintiffs' claim. This omission is at most negligent, which is not sufficient to prove bad faith on the part of Defendant. Additionally, Plaintiffs have not presented any evidence of an industry wide standard that Defendant deviated from.

Other than the fact that Defendant denied Plaintiffs' insurance claim, Plaintiffs have failed to cite any other evidence of bad faith. The parties agree that several different plumbers came to evaluate the damage and that they all reached the same conclusion: a leaking pipe underneath the slab caused water to enter the ground which then leaked into the foundation of Plaintiffs' home. Finally, the parties agree that Defendant was available for and open to communication with Plaintiffs regarding their claim. Defendant's agents were in regular contact with both the Colellas and Pierson, their representative. State Farm always responded to Plaintiffs' inquiries and provided

the information which Plaintiffs sought.  Plaintiffs have failed to show evidence of a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured which is required to make out a claim of bad faith based on <u>Romano</u>.  Therefore, summary judgment must be granted in favor of Defendant on Count II.

## IV.  Conclusion

For the reasons set forth in this Memorandum, Defendant's Motion for Summary Judgment is granted.  An appropriate Order follows.